# United States Court of Appeals
## For the First Circuit

No. 09-1574

CIANBRO CORPORATION; HORNBECK OFFSHORE SERVICES, LLC;
and HORNBECK OFFSHORE TRANSPORTATION, LLC,

Plaintiffs, Appellees,

v.

GEORGE H. DEAN, INC., d/b/a DEAN STEEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Stephen P. Griffin, with whom Griffin Law LLC, was on brief for appellant.
John R. Bass, II, with whom Bradford R. Bowman and Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., were on brief for appellee Cianbro Corporation.
Leonard W. Langer, with whom Marshall J. Tinkle and Tompkins, Clough, Hirshon & Langer, P.C., were on brief for appellees Hornbeck Offshore Services, LLC and Hornbeck Offshore Transportation, LLC.

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

February 22, 2010

**TORRUELLA**, **Circuit Judge**. We are called upon to determine whether an in rem maritime lien should be allowed against the vessels BENNO C. SCHMIDT and ENERGY SERVICE 9001 ("the Vessels") in favor of Defendant-Appellant George H. Dean, Inc., d/b/a Dean Steel ("Dean Steel"). This claim is challenged by Plaintiff-Appellee Cianbro Corporation ("Cianbro"), and Plaintiff-Intervenors Hornbeck Offshore Services and Hornbeck Offshore Transportation, LLC, ("the Hornbeck entities"). The Hornbeck entities are the owners of the Vessels and had entered into a contract for the repair and conversion of the Vessels with Cianbro as general contractor for this work. Because of the admiralty and maritime nature of this dispute,[1] and because we are required to interpret the Maritime Lien Act[2] to resolve the issues presented,[3] this controversy is deemed properly before us.

The district court granted a motion for summary judgment[4] in favor of Cianbro and thereafter issued a declaratory judgment to

---

[1] See 28 U.S.C. § 1333. We have jurisdiction under 46 U.S.C. § 31343 ("The district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien claimed under [the Maritime Lien Act], or that the vessel is not subject to the notice of claim of lien, or both, regardless of the amount in controversy or the citizenship of the parties.").

[2] See 46 U.S.C. §§ 31301-31343.

[3] See 28 U.S.C. § 1331.

[4] The district court adopted and affirmed the recommendations of the magistrate judge.

the effect that the Vessels were not subject to a maritime lien in favor of Dean Steel. Dean Steel filed a timely appeal to this decision.

Upon due consideration of the record and the arguments of all parties, we affirm the decision of the district court in all respects.

## I. Background

**A. Facts not in issue**

In 2006 the Hornbeck entities[5] entered into a Vessel Conversion Contract ("the Contract") with Cianbro for the conversion of the Vessels from sulfur tankers into multi-purpose supply vessels. Section 6.1 of the Contract provided that:

> All portions of the Work that [Cianbro] does not perform shall be performed under subcontracts or by other appropriate agreement between [Cianbro] and the entity performing the work. Nothing contained in the Contract . . . shall create any contractual relationship between [the Hornbeck entities] and any subcontractor of [Cianbro]. Notwithstanding the foregoing, for informational purposes only, [Cianbro] shall furnish to [the Hornbeck entities] at its request a copy of each Subcontract it enters into in connection with the Work. At the request of [the Hornbeck entities], [they] shall be included in all negotiations with the subcontractor and/or shall be provided pertaining thereto [sic]. Upon [the Hornbeck entities'] request, [Cianbro] will provide [the Hornbeck entities] with copies of all work papers and correspondence relating or pertaining to a subcontractor.

---

[5] Whose place of business is Louisiana.

- 4 -

In Section 6.2 of the Contract it is further established that:

> [The Hornbeck entities] may designate specific persons or entities from whom [Cianbro] shall obtain bids. [Cianbro] shall obtain bids from prospective Subcontractors and from suppliers of Materials or equipment fabricated especially for the Work and shall deliver such bids to [the Hornbeck entities] prior to the award in sufficient time for [the Hornbeck entities] to evaluate the bids without compromising the Project Schedule. [The Hornbeck entities] shall then determine, with the advice of [Cianbro,] which bids will be accepted. [Cianbro] will not be required to contract with anyone to whom [Cianbro] has reasonable objection.

In the following section, 6.3, the parties stipulated that "any subcontracts of any tier with affiliates of [Cianbro] or entities owned in whole or in part by shareholders of [Cianbro] . . . are to be awarded only with the written approval of [the Hornbeck entities]." The Contract further provided that Cianbro warranted to the Hornbeck entities that it would complete the work free and clear of any liens, a provision which fueled Cianbro's filing of the present action seeking a declaration that such liens had not been established, and an action in which the Hornbeck entities have intervened as interested parties.[6]

---

[6] See Fed. R. Civ. P. 24(a).

Thereafter, on or about November 1, 2006, Cianbro, as general contractor,[7] by means of a purchase order so dated contracted with Hub Technologies, Inc. ("Hub"),[8] a business entity engaged in the manufacture, design, engineering and fabrication of structures used in various industrial applications, to fabricate for Cianbro certain steel components to be used in the conversion work of the Vessels. As required by Section 6.2 of the Contract, prior to awarding the bid to Hub, Cianbro identified the bid to the Hornbeck entities and delivered Hub's bid to them. There is no evidence in the record that the Hornbeck entities had any other involvement in this relationship or in the performance by Hub of its contract with Cianbro.

Cianbro agreed that it would supply some of the necessary steel to Hub from its stores since it was aware that Hub itself did not supply or warehouse structural steel, and that Hub would need to acquire the steel from other suppliers. Cianbro never informed Hub that Hub was not authorized to incur liens on the Vessels or to extend credit on the Vessels to its subcontractors. Nor did Cianbro instruct Hub to inform its subcontractors that the subcontractors would not be allowed to place liens on the Vessels or to rely on the credit of the Vessels.

---

[7] Whose principal place of business is Pittsfield, Maine, and who also has a place of business in Portland, Maine.

[8] Whose principle place of business is Middleboro, Massachusetts.

In December of 2006, Dean Steel[9] became involved in the project as a subcontractor to Hub. Dean was to perform some of the initial cutting work on the steel as part of Hub's project to fabricate the steel into components for the Vessels. Both Hub and Dean Steel were provided with the plans, drawings, and specifications for the conversion project ("the specifications") by Cianbro, so that the finished components to be delivered to Cianbro by Hub would meet the specifications. In the meantime, Cianbro shipped approximately 230,000 pounds of raw structural steel directly to Dean Steel at Hub's request, and as a result, together with the steel supplied by Dean Steel itself, between November, 2006 and October, 2007 Dean Steel supplied Hub with substantial quantities of structural steel which had been cut in accordance with the specifications. Thereafter, Hub used the steel delivered by Dean Steel to Hub's facilities to fabricate the components that Hub had contracted for with Cianbro for installation in the

---

[9] Whose principal place of business is Warwick, Rhode Island.

Vessels.[10] Most importantly, it is undisputed that Dean Steel never delivered any components directly to Cianbro nor to the Vessels.

These components were later installed in the Vessels by Cianbro, which paid Hub in full for the work and materials that it had provided in manufacturing these components. Unfortunately, Hub had failed to pay Dean Steel for all of the work and materials that Dean Steel had invested in the steel used in these components. When Hub filed for bankruptcy in November 6, 2007, Hub owed Dean Steel the sum of $249,910.52 for the materials and labor that Dean Steel had provided to Hub. Nevertheless, Dean Steel proceeded to file notices of maritime liens against the Vessels for said amount, claiming that it had provided necessaries to the Vessels between November 15, 2006 and September 18, 2007 but had not been paid for the same. In response, Cianbro filed an action for declaratory judgment under 46 U.S.C. § 31343(c)(2). The Hornbeck entities intervened as a plaintiff, and Cianbro and the Hornbeck entities moved for summary judgment on their claim.

---

[10] Cianbro and the Hornbeck entities claim that, aside from the communications necessary to facilitate the transfer of steel, there was no communication between Cianbro and Dean Steel, and that there was never any communication between the Hornbeck entities and Dean Steel. Cianbro further claims that its management had no knowledge that Dean Steel was part of the project until September of 2007. However, Dean Steel claims that by virtue of Cianbro's agreement to ship steel to Dean Steel, the management at Cianbro knew that Dean Steel was a part of the project. Dean Steel also introduced into evidence a statement from Harley Waite, Jr., the president of Hub, who claimed that in December 2006, Cianbro, Hub, and Dean Steel engaged in "extensive communications concerning the raw structural steel which Cianbro was supplying Hub for the Conversion Project."

**B. The decision of the District Court**

In adopting the Recommended Decision of the Magistrate Judge, the district court granted summary judgment against Dean Steel on two alternate grounds which succinctly encapsulate the medulla of the question to be decided by us: first the district court concluded that Dean Steel failed to raise a genuine issue that it acted at the direction of the Vessels' owners or the Vessels' designee; and second that Dean Steel failed to raise a genuine issue of material fact regarding whether it provided necessaries to the Vessels.

## II. Discussion

**A. Rules of engagement**

We review a district court's grant of summary judgment de novo. Bukuras v. Muller Group, LLC, Nos. 08-2160, 08-2161, 2010 U.S. App. LEXIS 1169, at *13 (1st Cir. Jan. 20, 2010). Summary judgment is appropriate if, viewing all factual disputes in the light most favorable to the non-moving party, there is no genuine issue of material fact that would prevent judgment for the moving party as a matter of law. Meuser v. Federal Express Corp., 564 F.3d 507, 515 (1st Cir. 2009). A fact is material if its resolution would "affect the outcome of the suit under the governing law," and the issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

- 9 -

**B. The law and the conclusions that follow**

To establish a maritime lien on a vessel, the lien claimant must prove, inter alia, that it provided necessaries to the vessel "on the order of the owner or a person authorized by the owner." 46 U.S.C. § 31342(a); Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1249 (11th Cir. 2005). Under 46 U.S.C. § 31341, there are certain persons who are presumed to have authority to procure "necessaries" to a vessel. These include the owner, the master, "a person entrusted with the management of the vessel at the port of supply," or an officer or agent appointed by the owner or "a charterer" of the vessel. 46 U.S.C. § 31341.

At the very outset, Dean Steel is faced with the well-established precept that the requirements for the allowance of a maritime lien are strictly construed, Tramp Oil & Marine, Ltd. v. M/V "Mermaid I", 805 F.2d 42, 46 (1st Cir. 1986). Because a maritime lien is deemed to "encumber commerce," People's Ferry Co. v. Beers, 61 U.S. 393, 402 (1857), it is "disfavored in the law," and its requisites are construed stricti juris by the courts. Sweet Pea Marine, Ltd., 411 F.3d at 1252; Container Application Int'l, Inc. v. Lykes Bros. S.S. Co., 223 F.3d 1361, 1366 (11th Cir. 2000). Dean Steel has failed to overcome this burden on at least two grounds.

**C. Dean Steel failed to make the factual showing that it provided necessaries <u>to the Vessels</u> as is required by 46 U.S.C. § 31342(a)**

46 U.S.C. § 31342(a) states that "a person providing necessaries <u>to a vessel</u> on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel . . . ." (emphasis added). It has long been the law that an essential element of establishing a maritime lien is that the necessaries be either (1) physically delivered to the vessel, or (2) constructively dispatched to the vessel by the handing over of the supplies to the owner or the owner's authorized agent for use on a designated vessel. <u>See</u> <u>Piedmont & George's Creek Coal Co.</u> v. <u>Seaboard Fisheries Co.</u>, 254 U.S. 1, 6-7 (1920) ("No coal was delivered by the Coal Company directly to any vessel; and it had no dealings of any kind concerning the coal directly with the officers of the vessel. All the coal was billed by the Coal Company to the Oil Corporation and there was no reference on any invoice, or on its books, either to the fleet or any vessel.").

As the facts established show, the steel fabricated by Hub was provided by either Cianbro or Dean Steel, and delivered by Dean Steel <u>to Hub</u> in Hub's Massachusetts facilities. Hub then proceeded to use that steel to fabricate components which were then delivered to Cianbro's facilities in Portland, Maine for installation in the Vessels. Dean Steel has provided no evidence that it had dealings with the Vessels or their owners. Dean Steel dealt only with Hub and provided the steel <u>to Hub</u>. What happened

- 11 -

to the steel after Hub took possession of it from Dean Steel broke the chain of events leading to the establishment of a maritime lien as far as the Vessels are concerned.

There are at least four barriers insulating the Vessels from the establishment of a maritime lien by Dean Steel: the first barrier is raised by reason of the facts establishing the relationship between Dean Steel and Hub. Dean Steel was a supplier of steel to Hub, not to either Cianbro or the Vessels. The Vessels played no role in this relationship. Although Dean Steel might have been able to claim a mechanic's lien against Hub for the steel and labor invested while the steel remained in Hub's possession, Dean Steel made no attempt to exercise such right.[11]

The second barrier arises because Hub was the entity which received the steel from Dean Steel and fabricated it into components to be installed on the Vessels. At this point no claim of any nature could be made by Dean Steel against the Vessels, certainly not one involving a maritime lien, as it had not delivered any necessaries to the Vessels or anyone with authority to manage the Vessels.

The third barrier arises from the fact that Hub then transferred the fabricated component to Cianbro, an entity with which Dean Steel had no relationship other than that it shaped some of the raw steel provided by Cianbro (in addition to Dean Steel's

---

[11]  Cf. Mass. Gen. Laws ch. 254, §§ 1 et seq.

own), which was to be manufactured in accordance with the specifications that Cianbro had provided. Again, however, there are no facts involving the Vessels or anyone authorized to manage the Vessels that would provide the basis for the establishment of a maritime lien against the Vessels.

Finally, we have the fourth barrier, which is the installation of the fabricated steel sections onto the Vessels by Cianbro, the only party in this matter with whom representatives of the Vessels had any dealings. It is only Cianbro that supplied "necessaries" (i.e., the components) to the Vessels and thus it is only Cianbro that might have legal standing to assert a maritime lien on its own behalf.[12]

Dean Steel is apparently under the mistaken apprehension that a maritime lien is the functional equivalent of a materialman's lien in land-related jurisprudence, a misconception which was clarified by the Supreme Court some time ago. See Piedmont & George's Creek Coal Co., 254 U.S. 1. In that case the Court stated that:

> [T]he principle upon which maritime liens rest . . . [is a] very different principle [from that] which underlies mechanics' and materialmans' liens on houses and other structures. The former had its origin in [the] desire to protect the ship; the latter mainly in the desire to protect those who

---

[12] However, since Cianbro's contract with Hornbeck explicitly states that it did not have the authority to create a maritime lien against the Vessels, that would not be the case here.

>      furnish work and materials.  The maritime lien
>      developed as a necessary incident of the
>      operation of vessels . . . .  Because the
>      ship's need was the source of the maritime
>      lien it could arise only if the repairs were
>      necessary; if the pledge of her credit was
>      necessary to obtaining them; if they were
>      actually obtained, and if they were furnished
>      upon her credit.  The mechanic's and
>      materialmans' lien, on the other, attaches
>      ordinarily although the labor and material
>      cannot be said to be necessary, although at
>      the time they were furnished there was no
>      thought of obtaining security upon the
>      building; and although the credit of the owner
>      or others had in fact been relied upon.  The
>      principle upon which the mechanic's lien rests
>      is, in a sense, that of unjust enrichment.

<u>Id.</u> at 8-9.

There is no evidence in the record that would support a conclusion that Dean Steel relied on the Vessels' credit in supplying its steel and labor to Hub.  Furthermore, as established beyond any doubt, the necessaries (the fabricated steel components) were provided to the Vessels by Cianbro, not Dean Steel.  Thus, Dean Steel lacks standing to claim the establishment of a maritime lien upon the Vessels. It did not supply necessaries <u>to the Vessels</u>.

**D. Dean Steel has also failed to make a factual showing that in providing material and labor to Hub, it acted "on order of the [Vessels'] owner or a person authorized by the owner," as required by 46 U.S.C. § 31342(a)(1)**

As the Maritime Lien Act unequivocally states, to establish a maritime lien the claimant must have provided the necessaries to the vessel "on order of the owner or a person

authorized by the owner."  46 U.S.C. § 31342(a)(1).  There are no facts in the record that would support a conclusion that the owner of the Vessels, the Hornbeck entities, had any dealings or communications with Dean Steel of any nature whatsoever, much less that they authorized Dean Steel to provide material and labor to anyone.  In fact, Cianbro, the general contractor with whom the Hornbeck entities entered into the contract for the conversion of the Vessels, had no contract with Dean Steel to provide any services or materials, and Dean Steel was not even mentioned in Cianbro's subcontract with Hub for the fabrication of the components eventually installed in the Vessels.

There is nothing in the record to support a finding that the Hornbeck entities authorized or approved Cianbro's actions in subcontracting its fabrication work to Hub, or of Hub's relationship and actions with respect to Dean Steel.  None of these actions by Cianbro, Hub, and/or Dean Steel have been shown by Dean Steel to have been taken at the direction or order of the Hornbeck entities.  See Crescent City Marine, Inc. v. M/V NUKI, 20 F.3d 665, 669 (5th Cir. 1994).  As the district court concluded, "(1) Dean Steel has no contractual ties to . . . Cianbro, (2) there is no evidence that [Dean Steel's] selection as a supplier to H[ub] was required or even reviewed by Hornbeck or Cianbro, and (3) [Dean Steel's] performance was not subject to . . . [Cianbro's] or [the Hornbeck entities'] oversight or approval."

Because of this dearth of evidence as to any express authorization by the Vessels' owners or their authorized representative,[13] Dean Steel attempts an end run by claiming that Cianbro was "a person entrusted with the management of the vessel at the port of supply" pursuant to 46 U.S.C. § 31341(a)(3), and that therefore it had implied authority to bind the Vessels' owners with Dean Steel. Leaving aside the fact that Dean Steel neither delivered the necessaries to the Vessels, as previously discussed, nor had substantive dealings with Cianbro, also as previously discussed, Dean Steel's interpretation of what is meant by "management of the vessel" is wrong as a matter of law. Dean Steel again runs directly into Supreme Court precedent in the form of the unpronounceable case of a ship named "Dampskibsselskabet," in which the Court held that management of a vessel means "direction and control for the purposes for which the vessel is used." Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of Cal., 310 U.S. 268, 279 (1940) (emphasis added). In that case, the Court held that a charterer who has authority to determine where the vessel sailed to, and what cargo it would carry, had management authority sufficient to bind the vessel and to submit it to a maritime lien. A similar outcome was had in Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY, 608 F.2d 197, 200 (5th Cir.

---

[13] In fact, as we have mentioned, Section 6.1 of the Contract specifically states that the Hornbeck entities disavow any contractual relationship with Cianbro's subcontractors.

1979) (holding that the chief officer of a vessel was deemed to have sufficient management authority to request additional services from stevedores and thus bind the vessel). See also The Eastern, 257 F. 874 (D.C. Mass. 1919) (holding that the chief engineer of a vessel had sufficient management authority with respect to the placement of an order for coal supply).

It would strain the language and purpose of the Maritime Lien Act to hold that while Cianbro had in its possession the Vessels for purposes of their reconstruction and conversion, it was also directing their operation for the purpose for which they were used. See Farwest Steel Corp v. Barge Sea-Span 241, 828 F.2d 522, 525-26 (9th Cir. 1987) ("[I]t cannot be said that acceptance of responsibility for repair approximates a delegation of authority over the movements of a vessel."); see also Integral Control Sys. Corp. v. Consol. Edison Co., 990 F. Supp. 295, 299 (S.D.N.Y. 1998) ("[T]here is a considerable body of law supporting the proposition that a subcontractor cannot assert a maritime lien against a vessel.").

Nor does the so-called "principal/agent or middleman" line of cases, which creates a minimal exception to these rules, provide a safe haven for Dean Steel's claims. See Lake Charles Stevedores, Inc. v. Professor Vladimir Popov M/V, 199 F.3d 220, 228-29 (5th Cir. 1999); Marine Fuel Supply & Towing v. M/V KEN LUCKY, 869 F.2d 473 (9th Cir. 1988). In Lake Charles Stevedores,

the Fifth Circuit held that although a general contractor could assert a maritime lien for services provided to a vessel by both the general contractor and its subcontractors, subcontractors could not assert a lien on their own behalf, "unless it can be shown that an entity authorized to bind the ship controlled the selection of the subcontractor and/or its performance." 199 F.3d at 229. As has been abundantly established herein, no such link existed between the Hornbeck entities and any of the subcontractors, including Dean Steel specifically. Even if the Hornbeck entities were aware that subcontractors were performing work on necessaries that eventually would be attached to the Vessels, because the record establishes that they did not have any participation in the subcontracting of this work or control over its performance, this awareness is irrelevant to the establishment of a maritime lien by the subcontractors. Id. at 232; Galehead, Inc. v. M/V ANGLIA, 183 F.3d 1242, 1246 (11th Cir. 1999) (a subcontractor is not entitled to a maritime lien "where the degree of involvement with the owner is minimal or nonexistent"); see also Tramp Oil & Marine, Ltd., 805 F.2d at 45.

There is nothing on the record that would support the conclusion that the Vessels' owners or their authorized representative agreed to, or even knew, that necessaries for the

- 18 -

Vessels would be provided by Dean Steel.[14]  The factual basis for establishment of a maritime lien is thus lacking.

Last, Dean Steel's contention to the effect that the 1971 amendments to the Maritime Lien Act granted Dean Steel additional support for its claim to a maritime lien against the Vessels is, under these facts, also mistaken.  The purpose of the 1971 Amendments was "to protect terminal operators, ship chandlers, ship repairers, stevedores, and other suppliers who in good faith <u>furnish necessaries to a vessel</u>."  H.R. Rep. No. 92-340, at B63 (1971) <u>reprinted in</u> 1971 U.S.C.C.A.N. 1363, 1365-66 (emphasis added).

As stated in House Report No. 92-340, accompanying H.R. 92-340:[15]

> Your Committee wishes to emphasize that [the 1971 Amendments] make[] <u>no change in maritime lien law, the priority of maritime liens, or in the accepted definition of necessaries</u>.  The practical effect of the bill is to negate the operation of a "no lien provision" in a charter to which the American materialism [sic] was not a party and of which he has no knowledge so that he will not be precluded from acquiring a lien for his services <u>to which he would otherwise be entitled</u>.  Enactment of the bill should have no adverse effect on responsible vessel charterers and should prove of great assistance to American

---

[14]  Cianbro could not have been an authorized representative of the Hornbeck entities by virtue of the Contract between them.

[15]  Reprinted at 1971 U.S. Code Cong., & Ad. News, 92nd Cong., 1st Sess., 1363. 1971 U.S.C.C.A.N. 1363.

>     materialmen in collecting amounts owed <u>on necessaries furnished a vessel</u>.

(emphasis added).

As previously explained, Dean Steel did not furnish necessaries to the Vessels. Rather, Dean Steel supplied materials to Hub, which then fabricated these materials, which were in turn delivered to Cianbro, which was the one that furnished these necessaries to the Vessels.

The grant of summary judgment in favor of Plaintiffs-Appellees is hereby **affirmed**. Costs are assessed against Appellant.